IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH DIEKEMPER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CIVIL NO. 11-154-GPM |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Petitioner Joseph Diekemper is currently serving a 120 month sentence after pleading guilty to conspiracy to commit bankruptcy fraud, conspiracy to commit mail fraud, making false statements for the purpose of influencing the United States Department of Agriculture ("USDA") Commodity Credit Corporation, and perjury. Mr. Diekemper filed this instant motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, Petitioner's motion is DENIED.

## Background

On May 21, 2004, Mr. Diekemper and his wife, Margaret Diekemper, filed for bankruptcy (*United States v. Diekemper*, S.D. Ill., No. 3:08-cr-30139-GPM-CJP-1, Doc. 1, p. 1). Mr. Diekemper then participated in an extensive scheme to defraud his creditors, the Bankruptcy Court, the Bankruptcy Trustee, and the USDA. After discovery of the scheme, Mr. Diekemper was indicted on twenty-three counts (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 1). Mr. Diekemper pled guilty, with a plea agreement, to four of those counts: conspiracy to commit bankruptcy fraud, conspiracy to commit mail fraud, making false statements for the purpose of

1

influencing the USDA Commodity Credit Corporation, and perjury (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 95, p. 1). The plea agreement contained an appellate waiver (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 61, p. 9). At his plea hearing, Mr. Diekemper signed a stipulation of facts that admitted to various illegal activity utilized to effectuate this scheme including undervaluing property and assets, hiding assets, titling property in the names of other individuals, failing to disclose income, fraudulently obtaining agricultural subsidies from the USDA, failing to disclose the use of money for gambling, and utilizing the mail to further this scheme (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 62, p. 1-2).

On April 13, 2009, this Court sentenced Mr. Diekemper to 120 months imprisonment for his mail fraud and 60 months imprisonment for each of the other three counts, with each sentence to run concurrently (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 95, p. 2). This sentence was within the effective guideline sentence of 97 to 121 months (Doc. 7-3, p. 17). Mr. Diekemper appealed his sentence, arguing that 1) his wife's probation conditions violated his fundamental right to a marital relationship, 2) the undersigned Judge's failure to recuse himself for bias violated Mr. Diekemper's right to due process, 3) the District Court's application of a leadership role enhancement was in error, and 4) the District Court failed to weigh all of the sentencing factors in 18 U.S.C. § 3553. *U.S. v. Diekemper*, 604 F.3d 345, 349 (7th Cir. 2010). On April 28, 2010, the Seventh Circuit affirmed the decision of this Court on all four issues. *Id.* at 356. Mr. Diekemper did not file an application for a writ of certiorari to the Supreme Court of the United States. Mr. Diekemper then filed this § 2255 petition. In the § 2255 petition, Mr. Diekemper briefly mentioned the issue of bias, which this Court liberally construed as a motion for recusal of the undersigned Judge. (Doc. 6, p. 4). The motion for recusal was denied by this Court on July 27, 2011. *Id.*

## ANALYSIS

### A. Timeliness

Section 2255 motions generally must be filed within a year of the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f). "When a defendant in a federal prosecution takes an unsuccessful direct appeal from a judgment of conviction," that judgment becomes final "when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 524-25 (2003). In federal court, the time for filing a petition for certiorari expires "90 days after entry of the Court of Appeals' judgment." *Id*. at 525, *quoting* Sup. Ct. R. 13.1. *See also Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008) (one-year time period in which to file motion to vacate began to run 90 days after dismissal of appeal). Here, the Seventh Circuit affirmed the decision of this Court on April 28, 2010. *U.S. v. Diekemper*, 604 F.3d 345, 356 (7th Cir. 2010). This judgment therefore became final when the time for filing a petition for certiorari expired 90 days later, which was July 27, 2010. Mr. Diekemper filed a petition for § 2255 relief on February 28, 2011 (Doc. 1, p. 1). Mr. Diekemper's petition was filed within a year of the date on which the judgment of conviction became final, and his petition is therefore timely.

### B. Evidentiary Hearing

A § 2255 motion does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). Moreover, mere speculation does not warrant an evidentiary hearing, as the petitioner must file a detailed and specific affidavit showing that "the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Kafo v.*

*United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). It is well established that the affidavit is "a threshold requirement; its absence precludes the necessity of a hearing." *Id.*

In the present case, Mr. Diekemper's petition does not explicitly request an evidentiary hearing, nor does it include an affidavit setting forth a specific basis for relief. Even if Mr. Diekemper's assertion in the middle of his petition that an evidentiary hearing "would be necessary to adequately inform the court" (Doc. 1, p. 24) is construed as a request for an evidentiary hearing, the absence of an affidavit precludes the necessity of a hearing. Mr. Diekemper filed an additional motion, which he titled a "Motion For Leave To File Traverse To The Government's Response and For Discovery" (Doc. 8). After careful review of the petition, files, and records, the Court concludes that any factual matters raised by the motion may be resolved on the record and neither an evidentiary hearing nor additional discovery are required in this case. Accordingly, the Court will resolve the petition without a hearing, and the Petitioner's motion for leave to file a traverse to the Government's response and for discovery is DENIED.

### C. Legal Standard

1. <u>Collateral review under 28 U.S.C. § 2255</u>

In general, the Court must grant a request to vacate, set aside, or correct a federal prison sentence when "the sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Therefore, relief under § 2255 can be granted only if an error is "jurisdictional, constitutional, or is a fundamental defect which inherently

results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997), *quoting Oliver v. United States,* 961 F.2d 1339, 1341 (7th Cir. 1992).

A § 2255 petition can be procedurally defaulted and is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Consequently, a § 2255 petition cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994).

Despite these proscriptions on the availability of § 2255 collateral review, procedural default cannot serve as the reason for dismissing an ineffective assistance of counsel § 2255 claim. *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005). Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

2. Ineffective Assistance of Counsel

When a § 2255 petition alleges ineffective assistance of counsel, the Court must evaluate the claim under the two-prong Strickland test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007), *cert. denied*, 552 U.S. 1118 (2008), *citing Strickland v. Washington*, 466 U.S. 668, 694 (1984). Mr. Diekemper bears a "heavy burden" in overcoming the presumption that his counsel rendered reasonably effective assistance. *See Walker v. Litscher*, 421 F.3d 549, 558 (7th Cir. 2005), *cert. denied*, 546 U.S. 1121 (2006), *citing Strickland*, 466 U.S. at 687-88. The Court's review of attorney performance is "highly deferential," with the underlying assumption

that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* Under *Strickland*, a petitioner must prove (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant such that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morgan v. Hardy*, 662 F.3d 790, 802 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1765 (2012), *quoting Strickland*, 466 U.S. at 694. If the Court finds *either* the performance *or* the prejudice component of the ineffective assistance claim deficient under the *Strickland* test, then there is no need to consider the sufficiency of the other component. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

    3.   <u>Waiver of Appellate and Collateral Attack Rights</u>

The Court will enforce a plea agreement's appellate and collateral attack waiver "if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Blinn*, 490 F.3d 586, 588 (7th Cir. 2007). Courts may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver. *See United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001); *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002). "[A] careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary." *Schuh*, 289 F.3d at 975. The court is "not required to conduct a specific dialogue with the defendant concerning the appeal waiver, so long as the record contains sufficient

evidence to determine whether the defendant's acceptance of the waiver was knowing and voluntary." *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999). Representations made during plea hearings are "entitled to a presumption of verity." *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000).

However, though a valid appellate waiver may be binding in other respects, it does not preclude judicial review of a claim that the plea agreement itself was the product of ineffective assistance of counsel. *Jemison*, 237 F.3d at 916 n.8. Therefore, if the defendant can demonstrate ineffective assistance of counsel with respect to the negotiation of the waiver, then the waiver is not effective against a § 2255 challenge. *See Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000). "[E]ven an ineffective assistance claim cannot survive a waiver unless the claim relates specifically to the voluntariness of the waiver itself." *Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000). That is, ineffective assistance claims related to anything other than the plea negotiation – related to counsel's performance at sentencing, for example – are barred by an enforceable waiver. *See id.* at 592-93.

**D. Mr. Diekemper's Motion to Vacate, Set Aside, or Correct Sentence**

Including its attachments, Mr. Diekemper's § 2255 motion was sixty-two pages long and discussed a host of issues. The majority of these issues are claims that Mr. Diekemper's counsel was ineffective and can be broken down into three distinct categories: ineffective assistance of counsel by failing to investigate the case and advise Petitioner regarding the plea, ineffective assistance of counsel for failing to object to an improper plea of guilty, and ineffective assistance of counsel at sentencing and appeal. Additionally, Mr. Diekemper argues that his sentence was invalid because counsel failed to argue that his leadership enhancement was based on a faulty argument by the Government (Doc. 1, p. 25-28), that he was not attempting to defraud anyone

7

but only filed bankruptcy on advice of counsel (*Id.* at 26), and that the Court failed to consider Mr. Diekemper's mitigating circumstances (*Id.* at 27-30).

Upon review, the appellate and collateral attack waiver in Mr. Diekemper's plea agreement is enforceable. As Mr. Diekemper's claims of ineffective assistance *directly related to the plea negotiation* are not barred by this otherwise enforceable waiver, the Court analyzes these specific claims on the merits. Mr. Diekemper's claims fail under a *Strickland* analysis. The waiver is enforceable with respect to Mr. Diekemper's sentencing and appeal, so allegations of ineffective counsel that relate to sentencing and allegations related to improper sentencing are summarily dismissed.

1. Procedurally Defaulted Claims

    Mr. Diekemper's plea agreement provides in pertinent part:

    [I]n exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence.

*United States v. Diekemper*, S.D. Ill., No. 3:08-cr-30139-GPM-CJP-1 (Doc. 61, p. 9). The terms of this appellate waiver are express, unambiguous, and plainly clear. Supporting Mr. Diekemper's knowing and voluntary entry into the agreement is his own signature on the plea agreement. Additionally, Mr. Diekemper's statements given during the November 26, 2008 change of plea hearing clearly illustrate that he knowingly and voluntarily entered into the plea agreement, and he specifically accepted the appellate waiver:

    THE COURT: Has anyone threatened you or anyone else forced you in any way to come here and plead guilty today?

    THE DEFENDANT: No.

> . . .
>
> THE COURT: Do you also understand that under some circumstances you or the Government may have the right to appeal any sentence that is imposed on you; however, you are waiving most of your appellate rights?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> The COURT: Is this your signature on the last page of the plea agreement that I'm holding up?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: Have you read this document, sir?
>
> THE DEFENDANT: Yes, we have.
>
> THE COURT: Did you read it before you signed it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you discuss it with your attorney –
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- before you signed it?
>
> THE DEFENDANT: Yes.

(Doc. 7-1, p. 11-13). The Court finds that Mr. Diekemper's waiver of appellate and collateral attack rights was clear and unambiguous. The Court further finds that Mr. Diekemper entered into the plea agreement knowingly and voluntarily. Therefore, the waiver is enforceable.

2. <u>Ineffective Assistance of Counsel by Failing to Investigate the Case and Advise Petitioner Regarding the Plea</u>

Mr. Diekemper's otherwise enforceable waiver does not bar his ineffective assistance of counsel claims insofar as the claims specifically relate to the plea agreement. Ineffective assistance of counsel in connection with the negotiation of the plea agreement goes to the issue

9

of voluntariness of the waiver. *Jones*, 167 F.3d at 1145. Therefore, the Court will review the specific claims that relate to the plea negotiation. Though these claims are numerous, none satisfy the *Strickland* prongs.

Mr. Diekemper asserts that his counsel failed to inform him of the pros and cons of going to trial versus engaging in plea negotiations and failed to give him a choice to reject the plea agreement. However, the Government attached to its response an affidavit submitted by Mr. Diekemper's counsel, Mr. Gilbert C. Sison, that paints a very different picture. Mr. Sison avers that not only was Mr. Diekemper given the choice of whether to reject his plea agreement, but Mr. Diekemper's decision to enter a guilty plea was against his attorney's advice. Mr. Sison states that to the best of his recollection, his advice to Mr. Diekemper was that Mr. Diekemper proceed to trial (Doc. 7-2, p. 2). Mr. Sison's strategy was to admit the perjury charge and contest the remaining charges, but Mr. Sison asserts that Mr. Diekemper was afraid of the potential consequences (*Id.*).

At his plea hearing, Mr. Diekemper affirmed on the record and under oath that he had ample opportunity to discuss his case with his attorney; that he understood that no one, including his attorney, could deny his right to a jury trial; and that he intended to plead guilty after discussions with counsel (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 103, p. 5-8). Counsel avers that he informed Mr. Diekemper of the pros and cons of proceeding to trial, and the Court finds this account to be credible. Counsel's performance did not fall below an objective standard of reasonableness here.

Mr. Diekemper next asserts that he "pled guilty . . . without knowledge of the statutory laws or how they applied to alleged conduct the government insisted that he had committed" (Doc. 1, p. 12). Specifically, Mr. Diekemper alleges this was because his attorney failed to: 1)

gather information of prior bankruptcy proceedings and conduct relevant research; 2) advise Petitioner of the applicable law; 3) communicate effectively with Petitioner; 4) include Petitioner in plea negotiations or explain their consequences, including waivers; and 5) counsel on possible sentences and/or enhancements before Petitioner entered into a plea of guilty.

     Mr. Diekemper fails to show deficient performance with these unfounded claims. Mr. Sison avers that he gathered all of the transcripts, depositions, and hearing tapes from the bankruptcy proceedings and informally consulted a bankruptcy attorney to help him understand the issues (Doc. 7-2, p. 4). Furthermore, Mr. Diekemper himself stated at his plea hearing that he was "explained" the elements for each charge against him (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 103, p. 10). Mr. Sison also averred that he read every letter that Mr. Diekemper sent and discussed those letters with Mr. Diekemper during the ten occasions either he or another attorney in his firm visited with Mr. Diekemper (Doc. 7-2, p. 6). It is clear from copies of letters that Mr. Diekemper sent to counsel—which Mr. Diekemper attached to his petition—that Mr. Diekemper was a demanding client. The Court credits Mr. Sison's recitation of his attention to Mr. Diekemper's case. The Court doubts that, even were Mr. Diekemper's version of his attorney-client relationship true, he would be able to establish deficient performance. Mr. Diekemper answered affirmatively at his plea hearing when asked whether he had discussed his plea agreement with his attorney before signing it (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 103, p. 13). Mr. Sison reviewed the plea agreement with Mr. Diekemper by going through it page-by-page with him and by explaining what everything meant (Doc. 7-2, p. 2). Although Mr. Sison admitted he "did not focus heavily" on the possible leadership enhancement when speaking with Mr. Diekemper, and that he was surprised by the four level leadership enhancement, Mr.

Diekemper was advised that his 30 offense level, which included the four level enhancement, was possible:

> THE COURT: The Government submits that they believe you will have an offense level of 30 and a criminal history category of I, where your sentencing guideline range is 97 to 121 months. Do you understand that, sir?
>
> THE DEFENDANT: Yes, I do.

(Doc. 7-1, p. 14). Additionally, Mr. Diekemper's plea agreement stated that the "Court ultimately will determine the guideline range" (Case No. 3:08-cr-30139-GPM-CJP-1, Doc. 61, p. 6). Thus, Mr. Diekemper cannot legitimately claim that counsel's performance vis-a-vis the possibility of a leadership enhancement was deficient.

Furthermore, Mr. Diekemper cannot show the requisite prejudice. He has not demonstrated a reasonable probability that had he been adequately informed of the applicable law and possible sentences—if in fact he was not, which the Court is not convinced—he would have pled not guilty. Mr. Diekemper feared the consequences of proceeding to trial and instead chose to plead guilty. That was his choice, and he cannot now blame counsel for that choice. In addition, Mr. Diekemper exercised his right to contest the enhancement before the Seventh Circuit Court of Appeals, which held that the four level sentencing enhancement was appropriate. *Diekemper*, 604 F.3d at 355. Accordingly, Mr. Diekemper has failed to meet either *Strickland* prong.

3. <u>Ineffective Assistance of Counsel for Failing to Object to an Improper Plea of Guilty</u>

Mr. Diekemper pled guilty on November 26, 2008 before Magistrate Judge Clifford Proud (Doc. 7-1). Mr. Diekemper asserts that counsel was ineffective for failing to advise him of his right to object to Magistrate Judge Proud's Report and Recommendation of guilt within the 10 allotted days (Doc. 1, p. 23). Mr. Diekemper also argues that he was denied due process when

counsel failed to object to Magistrate Judge Proud's alleged failure to: specify the charges and statutes violated; list the elements of the charges and what burden would be carried by which party; ensure that Petitioner was aware of the conduct to which he was pleading guilty; require the government to produce its evidence before the plea agreement was entered into; inform Petitioner of his right to object to the report and recommendation within 10 days and the consequences of failing to object; solicit the terms of the plea agreement in open court; provide consequences as to exposure of imprisonment in any meaningful terms; and explain the waivers contained in the plea agreement to Petitioner (*Id.* at 22-23).

Counsel was not ineffective for failing to advise Mr. Diekemper of his right to object to Magistrate Judge Proud's report and recommendation within 10 days. Even if this Court were to assume that Mr. Sison's failure to advise Mr. Diekemper of this right fell below an objective standard of reasonableness, Mr. Diekemper cannot show the prejudice required by the second prong of the *Strickland* test because Mr. Diekemper never instructed counsel to withdraw his guilty plea nor did Mr. Diekemper mention the report and recommendation at his sentencing hearing (Doc. 7-2, p. 6). This issue was only first raised after Mr. Diekemper was sentenced (*Id.*).

Additionally, Mr. Diekemper's allegations regarding counsel's failure to object to Magistrate Judge Proud's errors are without merit. The record clearly establishes that these allegations are simply not true. Magistrate Judge Proud specifically named the charges in the indictment (Transcript of Change of Plea, Doc. 7-1, p. 3). The elements for each count were explained, and Mr. Diekemper acknowledged that the elements for each charge had been explained to him (*Id.* at 9-10). Mr. Diekemper admitted the conduct which formed the basis for the plea (*Id.* at 17). The Government divulged evidence to the Court to support the charges (*Id.* at

13

17). Magistrate Judge Proud informed Mr. Diekemper that Mr. Diekemper would have the right to examine the report and recommendation recommending entry of judgment on the plea of guilty with the District Court and to object to it (*Id.* at 18-19). The terms of Mr. Diekemper's plea agreement were discussed in open court (*Id.* at 13-15). Mr. Diekemper was informed of his exposure to imprisonment in meaningful terms as the Court told Mr. Diekemper that his guideline range per the plea agreement was 97-121 months (*Id.* at 14).

Mr. Diekemper asserts that Magistrate Judge Proud failed to explain the consequences of waivers contained in the plea agreement (Doc. 1, p. 23). However, the transcript shows Mr. Diekemper was informed that, by accepting his plea agreement, he was waiving his right to a jury trial, his right at trial to confront and cross-examine adverse witnesses, his right to testify and present evidence, and his right to not incriminate himself (Doc. 7-1, p. 7-8). Federal Rule of Criminal Procedure Eleven does not require any further explanation of waivers. FED. R. CRIM. P. 11.

Because "a defendant's lawyer has . . . no duty to make a frivolous argument," *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003), counsel was not ineffective for failing to object to any of these non-existent errors.

4. Ineffective Assistance of Counsel at Sentencing and Appeal

Mr. Diekemper argues that counsel was ineffective at various points of sentencing and appeal. These allegations include that counsel was ineffective for failing to: challenge his wife's probation conditions at sentencing (Doc. 1, p. 23); file a motion before sentencing that asked for recusal of the undersigned Judge (Doc. 1, p. 23); contest the loss amount used in calculating Mr. Diekemper's advisory guideline range (Doc. 1, p. 23-24); raise the issue of Mr. Diekemper's diminished capacity caused by his gambling addiction (Doc. 1, p. 28-29); and raise a non-

frivolous appeal (Doc. 1, p. 30-31). As "[o]nly arguments that would nullify the plea itself survive" an enforceable waiver of appellate and collateral attack rights, Mr. Diekemper's waiver bars claims related to his sentencing or his appeal. *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000). Therefore, the Court rejects these claims.

## CONCLUSION

Mr. Diekemper's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED.** His motion for leave to file a traverse to the Government's response and for discovery is also **DENIED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  March 5, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge